**In re J.H.**

LOVECCHIO, *J.*, March 27, 2014—Before the court is a petition for mental health review on behalf of J.H. pursuant to 50 Pa. C.S.A. § 7109 (b).

The hearing on said petition was held before this court on March 26, 2014. While petitioner was not present for the hearing, his attorney was and requested that the petition be decided upon a review of the relevant paperwork and a transcript of the commitment hearing held before hearing examiner Steve Sholder on March 17, 2014.

Petitioner argues that the evidence fails to show that he is a danger to himself or others or that a reasonable probability exists that death or serious bodily injury or serious physical debilitation will ensue within thirty (30) days without adequate treatment.

An original involuntary examination and treatment application was filed on March 12, 2014 by petitioner's mother. Among other things, the mother verified that petitioner told her that that fighting the evil forces in his mind was making him exhausted and he was becoming too tired to fight them. He admitted to hearing voices commanding him to commit suicide. The evil forces, as well, were trying to destroy his family. He referenced as well "Timothy McVeigh."

An application for extended involuntary treatment was filed on March 14, 2014. Among other things, the

physician who examined the petitioner noted that the petitioner suffers from delusions and has expressed a belief that another person could control his mind and he would be helpless to stop a violent command.

Following the hearing on March 17, 2014, the hearing examiner concluded that the petitioner is consumed by the delusions to the point that he can no longer care for his everyday needs without assistance, that he has refused medication for the treatment of said delusions and that inpatient care was the least restrictive alternative to control him from hurting himself or others.

While the tape-recording of the hearing was somewhat difficult to decipher because of its poor quality and witnesses and/or participants speaking over each other, the court was able to decipher some significant portions relevant to the issues at hand.

The petitioner has been compliant with most recommendations except he has had no interest in taking medication. He has specifically expressed a concern that his thoughts "will take him over" such that he couldn't control himself and could hurt himself or others. While he hasn't tried to harm himself or anyone since committed and while he doesn't want to hurt himself or anyone, if he "weakens," it certainly could happen.

A few days prior to his commitment on March 12, 2014, the petitioner, while at home, was having overwhelming and constant delusions. He indicated that he was hearing two voices in his head and he was extremely paranoid. The voices were telling him to commit suicide, murder, rape and other horrible deeds such as those committed by Timothy McVeigh. He indicated that he had to do the horrible deeds if the voices told him to do so. He was

not willing to take the medication believing that it was "poison."

Petitioner expressed that the "mind control people were causing" his concerns and he was too tired to essentially fight them off. He was yelling, screaming, acting erratically and extremely paranoid. He specifically expressed that the voices were telling him to kill himself and he was too tired to fight them off.

His mother testified that it was "no secret that he will harm himself or someone else without taking prescribed medications."

His treating physician diagnosed the petitioner as suffering from schizophrenia of the paranoid type. He testified that he had "a lot of concern" with respect to the petitioner's dangerous behavior because of his refusal to take medication, his past and present symptoms and his proclivity to drink alcohol. While in a supportive environment, the petitioner is "okay."

While the doctor testified that he did not have "much grounds to believe" that the petitioner is a danger to himself or others within the next thirty (30) days or that he would act on the perceived "mind control," he indicated what is more important is to rely on the direct testimony of the others and their anecdotal evidence.

He testified that there is "good evidence" that he is not doing well outside of a supportive environment, that there is anecdotal evidence of threats, as well as dangerous situations to himself and others and that by him not taking medications, he is essentially a "time bomb."

This court must first determine whether the procedures prescribed by the act have been followed. An application

was made for involuntary treatment pursuant to the act. A follow-up application was made for extended treatment. A hearing was held before a mental health review officer. At said hearing, testimony was presented, the petitioner was represented by counsel and petitioner's rights pursuant to the act were protected. Following the hearing, an order was entered involuntarily committing the petitioner. An appeal was filed in a timely manner, this court in connection with the appeal reviewed the certifications, reviewed other evidence received at the hearing and reviewed additional evidence requested by the court. This decision is being entered in a timely manner pursuant to the act. Accordingly, this court finds by clear and convincing evidence that the procedures prescribed by the act have been followed.

The court must next determine whether further involuntarily treatment is required. In order to do this, the court must determine whether the petitioner is severely mentally disabled and in need of treatment in that he presents a danger to himself or others.

The court finds that there is clear and convincing evidence that the petitioner is severely mentally disabled and in need of treatment. The medical evidence reviewed by the court clearly supports the conclusion that the defendant suffers from schizophrenia of the paranoid type and is in need of treatment. Said treatment consists primarily of medical management by way of medication on a continual periodic basis.

The court also finds that there is clear and convincing evidence that the petitioner presents a danger to himself and others. While the petitioner is doing well in a supportive environment and while his treating physician cannot predict that he will harm himself or others within

the next thirty (30) days, petitioner's past portends his future. The court cannot and will not ignore the anecdotal evidence which consists of petitioner's deteriorating behavior, his escalating threats to himself and others, his refusal to take medication and his conduct with respect to himself and others. This is not as his counsel suggests a situation where the time bomb is "not present"; rather this is a situation in which the time bomb is in the petitioner's pocket.

In the past thirty (30) days, the petitioner has acted in a manner which suggests that he will be unable to satisfy his needs for medical care, self-protection and safety without the assistance of others such as there is a reasonable probability that death, serious bodily injury or serious physical debilitation would occur.

There is credible and in fact substantial evidence that petitioner's symptoms include hallucinations, delusional thoughts, paranoia, agitation, suicidal ideations, and homicidal ideations. The treating physician's testimony, the nurse's testimony and the testimony of his family member support a conclusion that there is a real potential for danger and that the petitioner remains a clear and present danger to himself and others in light of the fact that he cannot maintain his medication directive while even institutionalized let alone not institutionalized. The court cannot ignore his history of non-compliance.

In sum, the court fully agrees with petitioner's mother that it is "no secret" that the petitioner will harm himself or someone else without appropriate medical intervention.

## ORDER

And now, this 27th day of March 2014, following

a review of the initial 302 certification and attendant paperwork, a review of the subsequent 303 certification and attendant paperwork and review of the transcript of the hearing before the mental health review officer, the court denies petitioner's petition for mental health review. Petitioner shall remain involuntarily committed, unless otherwise ordered, for a period not to exceed twenty (20) days from March 17, 2014.